**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL**

| | | |
|---|---|---|
| **MIGUEL CARRERA, JR. and** | § | |
| **JASMINE NOL, Individually** | § | |
| **and As Next Friend of** | § | |
| **A.C., a minor** | § | |
|     **Plaintiff,** | § | **CAUSE NO. 2:19-CV-36** |
| | § | |
|     **v.** | § | |
| | § | |
| **TEXAS DEPARTMENT OF CRIMINAL** | § | |
| **JUSTICE, UNIVERSITY OF TEXAS** | § | |
| **MEDICAL BRANCH AT GALVESTON,** | § | |
| **ROBERT STEVENS, Individual Capacity,** | § | |
| **GUARD 1, Individual Capacity,** | § | |
| **GUARD 2, Individual Capacity** | § | |

## PLAINTIFFS' ORIGINAL COMPLAINT

Miguel Carrera, Jr., Individually and as Next Friend of A.C., a minor and Jasmine Nol, Individually and as Next Friend of A.T., a minor brings this their suit against Texas Department of Criminal Justice ("TDCJ"), University of Texas Medical Branch at Galveston ("UTMB"), Robert Stevens ("Warden Stevens"), in his individual capacity for official actions as the former warden of Texas Department of Criminal Justice's Skyview Unit, Guard 1 ("Guard 1"), in his individual capacity, and Guard 2 ("Guard 2"), in his individual capacity.

## Nature of Case

1.    Miguel Carrera, Jr., 22, has suffered schizophrenia since he was a teen. On or about February 17, 2017, while incarcerated at Texas Department of Criminal Justice's Skyview Unit, Mr. Carrera was left unmonitored with a spoon in his cell while in a severe psychotic episode. Mr. Carrera removed his right eye with a spoon and severally damaged his left eye in an attempt to remove it as well. Mr. Carrera is permanently blind.

2.    Mr. Carrera brings suits against the warden and two guards in their individual capacity for their official conduct under color of law for subjecting him, a mentally disabled

person, to cruel and unusual punishment as prohibited by the Eight Amendment and Fourteenth Amendment to the United States Constitution.  In addition, Mr. Carrera brings suit against TDCJ, UTMB, Warden Stevens, Guard 1 and Guard 2 for the violation of Title II of the Americans with Disabilities Act for subjecting him to cruel and unusual punishment as prohibited by the Eighth and Fourteenth Amendments.

### Juridiction and Venue

3.      This Court has jurisdiction over this suit pursuant to 28 U.S.C. §§ 1331.  The Court has personal jurisdiction over the individual defendants because they were residents of Texas at the time of the events made the basis of the suit.  The Court has personal jurisdiction over the state defendants because sovereign immunity is abrogated in this suit.  Venue of this suit is proper in the United States District Court for the Eastern District of Texas pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred at Skyview Unit in Rusk, Cherokee County, Texas.

### Parties

4.      Plaintiff, Miguel Carrera, Jr., is a resident of Harris County, Texas.  He is the spouse of Jasmine Nol.  He is the father of A.T.

5.      Plaintiff, Jasmine Nol, is a resident of Harris County, Texas.  She is the spouse of Miguel Carrera, Jr.  She is the mother of A.C.

6.      Defendant, Texas Department of Criminal Justice, is a department of the State of Texas.  It may be served with summons through its executive director: Bryan Collier, 209 West 14th Street, 5th Floor, Price Daniel Building, Austin, Texas, 78701.

7.      University of Texas Medical Branch is a political subdivision of the state.  It may be served with summons through the executive director: David L. Callender, M.D., M.B.A., FACS, 301 University Blvd., Suite 6.100 Administration Building, Galveston, Texas, 77555-0129.

8.      Defendant, Robert Stevens, is a resident of Brownwood, Brown County, Texas.  He was the warden of Skyview Unit during the events made the basis of the suit.  He may be served with summons at: 4201Austin Avenue, Brownwood, Texas 76801.

9.      Defendant, Guard 1, was a resident of Texas at the time of the incident.  There is insufficient information for service of summons.

10.     Defendant, Guard 2, was a resident of Texas at the time of the incident.  There is insufficient information for service of summons.

**Exhaustion of Administrative Remedies**

11.     On June 30, 2017, Mr. Carrera submitted a written grievance to Warden Stevens.

**Notice**

12.     On June 30, 2017, Mr. Carrera notified the Texas Office of Attorney General and Warden Stevens in writing of the facts of the claim and intent to bring a claim for compensation. On January 31, 2019, Mr. Carrera provided written notice of his claim and a signed authorization form for release of protected health information to UTMB.

**Facts**

13.     Miguel Carrera, Jr., 22, has suffered from schizophrenia since he was a teen. Schizophrenia is a chronic and severe mental disorder that interferes with a person's ability to think clearly, manage emotions, make decisions, and relate to others.  A person with schizophrenia experiences hallucinations and paranoid delusions which are very real to the person experiencing them.

14.     In 2014, Mr. Carrera's mental illness caused him to attack a security guard resulting in probation.  Mr. Carrera's mental illness makes him prone to violence directed towards himself. In one episode documented in his criminal and medical records, Mr. Carrera swallowed a taser

that the police shot him with in order to gain control over him.  Mr. Carrera's violent psychotic episodes are documented in his criminal and medical records.

15.     While on probation in December 2016, Mr. Carrera experienced another psychotic break.  He began stabbing and slicing himself with a knife.  His wife called the police.  As a result of his previous failure to meet requirements of his probation, the court revoked the probation and sent him to state prison on January 5, 2017.

16.     The Texas Department of Criminal Justice assigned Mr. Carrera to Skyview Unit because he obviously experiencing paranoid delusions and attempting to harm himself by slamming his head against the wall.  While at Skyview Unit, Mr. Carrera continued to experience psychotic episodes.  The hallucinations and paranoid delusions caused him to scream that he wanted to kill himself.  He tried to harm himself by banging his head on the floor and wall.   Mr. Carrera never received any relief from the terrible thoughts he had in his head.

17.     On or about February 17, 2017, after suffering uncontrollable fear from the hallucination and desiring to end the horrible experience, Mr. Carrera removed his right eyeball completely from the eye socket with a spoon.  This included severing all of the muscles, blood vessels, nerves, ligaments and connective tissue connecting the eyeball to the eye socket.  The eyeball fell to the floor.  After, Mr. Carrera performed a self-enucleation of the right eye, he started the same procedure on his left eye.  Mr. Carrera was unable to completely remove his second eyeball, but he caused sufficient damage in the process to cause permanent blindness in his left eye.  Specifically, he tore off the cataract and retina and ruptured the globe.  When a guard finally passed by Mr. Carrera's cell, he witnessed Mr. Carrera crawling around on the floor searching for his right eyeball.

18.     Skyview Unit transported Mr. Carrera to a local hospital where he was initially assessed by a medical team.  A decision was made to transport him to UTMB-Galveston for care.

The healthcare providers at UTMB-Galveston were unable to save his sight.  At age 22, Mr. Carrera is permanently blind.

19.     The Correctional Managed Health Care Policy Manual – Suicide Prevention Plan provides the following policies for offenders who may be at risk for suicide or self-harm:

(1) Mental Health Observation: It applies to an offender who is determined to be at risk for self-injury but who is not actually suicidal or an imminent risk to do significant medical harm.  The offender is placed in a specially prepared and approved cell.  The inmate is observed every 30 minutes for psychiatric symptoms.

(2) Crisis Management:  It applies to an offender who is determined to be at imminent risk of significant self-injury or suicide.  The offender is placed in a specially prepared and approved cell.  The offender is observed for psychiatric symptoms at least every 15 minutes.

(3) Constant and Direct Observation: It applies to an offender who is determined to require Crisis Management for immediate care.  The offender is constantly observed by an officer who is close enough and has the means to intervene to prevent self-injury.

(4) All cells or rooms used for Mental Health Observation / Crisis Management must be visually inspected and approved by the Facility Warden, supervising qualified mental health professionals, medical director and director of nurses.   The cell cannot contain any fixtures which the offender may use to harm themselves.  Offenders who are at risk for self-injury should not be permitted to possess items with which they may injure themselves.  These items include eating utensils.

(5) A qualified mental health professional must be notified if the offender's mental status significantly deteriorates.

20.     Warden Stevens and the guards failed to directly and constantly monitor Mr. Carrera to prevent Mr. Carrera from removing and damaging his eyes.  Further, Warden Stevens and the guards failed to make certain that Mr. Carrera did not have access to a spoon which could be used as a weapon of self-harm.  These failures subjected Mr. Carrera to cruel and unusual punishment.

21.     TDCJ and UTMB failed to protect Mr. Carrera, a disabled person, from cruel and unusual punishment.  TDCJ and UTMB intentionally under-staffed Skyview Unit so that the employees were overworked and overtaxed in high anxiety and pressured filled jobs.  The under-staffed and stressful job environment created an atmosphere of deliberate indifference to the rights, safety and welfare of the mentally ill offenders like Mr. Carrera and of which the defendants had actual and subjective awareness but nevertheless proceeded to ignore although there was a great risk of harm.

## Violation of 42 U.S.C. 1983

22.     The failure to constantly and directly monitor Mr. Carrera and permitting him access to a spoon resulted in a violation of Mr. Carrera's right to not be subjected to cruel and usual punishment as guaranteed by the Eighth Amendment of the United States Constitution.  Mr. Carrera has a private right of action against the individual defendants for fair and just compensation for the deprivation of his constitutional right.  "Every person, who under color of any statute, ordinance, regulation, custom or usage, of any State or Territory or the District of Columbia, subjects or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress…".  42 U.S.C. § 1983.  Mr. Carrera seeks recovery from Warden

Stevens, Guard 1 and Guard 2 for depriving him of his constitutional right to not be subjected to cruel and unusual punishment.

23.     The right to not be subjected to cruel and unusual punishment was a clearly established right at the time Mr. Carrera blinded himself while experiencing hallucinations and paranoid delusions in the custody of the state.  Warden Stevens, Guard 1 and Guard 2 deprived Mr. Carrera of the right to not be subjected to cruel and unusual punishment when they failed to directly and constantly monitor him and permitted him access to a spoon.  There is no dispute that Mr. Carrera had access to a banned object.  Further, the facts establish that the individual defendants were not monitoring Mr. Carrera because the removal of an eyeball, i.e., detaching it from all of the muscles, nerves, blood vessels, ligaments and connective tissues, with a spoon is an undertaking that requires time.

24.     The individual defendants had actual knowledge that Mr. Carrera wanted to inflict serious self-harm or suicide, yet they proceeded with deliberate indifference in ignoring his threats of self-harm, refusing to stop him from hitting his head in an attempt to harm himself, failing to monitor him, and allowing him access to an object with which he inflicted serious and permanent injury on himself.  The individual defendants had actual knowledge that Mr. Carrera was mentally ill, experiencing hallucinations and paranoid delusions in a psychotic episode, and was unable to prevent harm to himself yet deliberately ignored him.  The individual defendants also had actual knowledge that a spoon was an object that mentally ill offenders are not permitted to possess.  Yet the individual defendants permitted Mr. Carrera to have access to it.  Suicide and self-harm inflicted by a mentally ill offender is cruel and unusual punishment because it is the unnecessary and wanton infliction of pain and permanent impairment.

**<u>Individual Defendants not Entitled to Qualified Immunity</u>**

25.     The individual defendants' conduct of ignoring Mr. Carrera and permitting Mr. Carrera access to a utensil during an ongoing psychotic episode taking into account Mr. Carrera's recorded history of self-harm was not objectionably reasonable in light of the clearly established constitutional right to not be subjected to cruel and unusual punishment.  The right to not be subjected to cruel and unusual punishment was so clearly established at the time of the incident that a reasonable official would understand that ignoring the threats of self-harm, acts of self-harm, failure to monitor, and allowing the mentally-ill-prisoner-with-a-documented-history-of-self-harm access to a tool of self-harm clearly violated Mr. Carrera's constitutional right to be not be subjected to cruel and unusual punishment.  The facts demonstrate that the individual defendants' actions were either plainly incompetent or they knowingly violated Mr. Carrera's Eighth Amendment rights.  In other words, all reasonable officials under the same circumstances would have known that the above-described conduct violated Mr. Carrera's right to not be subjected to cruel and unusual conduct.

### Violation of Title II of Americans with Disabilities Act

26.     The Americans with Disabilities Act defines a disability as a physical or mental impairment that substantially limits one or more major life activities, a record of such impairment, or a determination of having an impairment.  Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by such entity."  42 U.S.C. § 12312.  TDCJ and UTMB intentionally discriminated against Mr. Carrera through its policy, custom and practice of under-staffing the prison.  Offenders with schizophrenia who are experiencing psychotic episodes and threatening self-harm require constant monitoring and direct supervision so that immediate action may be taken to prevent self-harm or suicide.  TDCJ and UTMB did not provide a sufficient number of employees to properly

monitor for the crisis occurrence or to provide constant monitoring during the crisis given the number of offenders at Skyview Unit.  TDCJ and UTMB are vicariously liable for the acts and omissions of its employees and policymakers.  *Delano-Pyle v. Victoria County, Texas*, 302 F.3d 567 (5th Cir. 2002).

27.     The intentional under-staffing of Skyview Unit resulted in the guards deliberately ignoring Mr. Carrera while he was in a state of psychosis screaming that he wanted to hurt himself and deliberately permitting him access to a spoon.  The intentional discrimination violated Mr. Carrera's Eighth Amendment right to not be subjected to cruel and unusual punishment which is a right incorporated in Section 1 of the Fourteenth Amendment.

## UTMB  and TDCJ not Entitled to Sovereign Immunity

28.     UTMB and TDCJ are subdivisions or departments of the state.  However, they are not entitled to sovereign immunity for violation of Title II of the American with Disabilities Act because Mr. Carrera's right to be from cruel and unusual punishment is protected not only under the Eighth Amendment but also under Part 1 of the Fourteenth Amendment.  *United States v. Georgia,* 546 U.S. 151 (2006).

29.     Further, the acceptance of federal financial aid to pay student tuition amounts of abrogation of sovereign immunity for a state entity.  42 U.S.C. § 42 U.S.C. § 2000d-7.  *Bennett-Nelson v. La. Board of Regents,* 431 F.3d 448 (5th Cir. 2005, cert. denied).  UTMB receives federal funds for the tuition payment of its medical students and federal grants for medical research.

## Damages

30.     The defendants' deprivation of Mr. Carrera's constitutional right and the defendants' violation of the American with Disabilities Act directly, proximately and in fact caused the following damages to which Mr. Carrera is entitled to under the law:

    a.   Physical pain and mental anguish sustained in the past;

b.  Physical pain and mental anguish that, in reasonable probability, Mr. Carrera will suffer in the future;

c.  Physical impairment in the past;

d.  Physical impairment that, in reasonable probability, Mr. Carrera will suffer in the future;

e.  Loss of earning capacity sustained in the past;

f.  Loss of earning capacity that, in reasonable probability, Mr. Carrera will suffer in the future;

g.  Disfigurement sustained in the past;

h.  Disfigurement that, in reasonable probability, Mr. Carrera will suffer in the future;

i.  Medical care expenses incurred in the past; and

j.  Medical care that, in reasonable probability, Mr. Carrera will suffer in the future.

31.  The defendants' deprivation of Mr. Carrera's constitutional right and the defendants' violation of the American with Disabilities Act directly, proximately and in fact caused the following damages to which Ms. Nol is entitled to under the law:

a.  Loss of household services sustained in the past;

b.  Loss of household services that, in reasonable probability, Ms. Nol will suffer in the future;

c.  Loss of consortium sustained in the past; and

d.  Loss of consortium that, in reasonable probability, Ms. Nol will suffer in the future.

32.  The physical injury to Mr. Carrera was a serious, permanent and disabling injury. The defendants' deprivation of Mr. Carrera's constitutional right and the defendants' violation of the American with Disabilities Act directly, proximately and in fact caused the following damages to which A.C. is entitled to under the law:

a.  Loss of consortium services sustained in the past; and

b.  Loss of consortium that, in reasonable probability, A.C. will suffer in the future.

**Punitive Damages**

33.     The individual defendants' deprivation of Mr. Carrera of his constitutional right to not be subjected to cruel and unusual punishment was committed with reckless and callous disregard for his rights.  The defendants' deprivation of Mr. Carrera violation of the ADA was intentionally committed.    Therefore, the plaintiffs seek punitive damages.

**Prayer**

34.     The plaintiffs pray that the defendants be summoned and answer to this Complaint, and that the plaintiffs have and recover from the defendants the following:

i.     Actual damages;

ii.     Statutory damages;

iii.     Punitive damages;

iv.     Reasonable cost of the necessary legal services pursuant to 42 U.S.C. § 1988(b) and 42 U.S.C. § 12205;

v.     Expert fees pursuant to 42 U.S.C. § 1988(c) and 28 U.S.C. § 1920;

vi.     Costs pursuant to 28 U.S.C. § 1920;

vii.     Interest pursuant to 28 U.S.C. § 1961; and

viii.     All other relief to which the plaintiffs are entitled.

Respectfully submitted,

The Greenwood Prather Law Firm, PLLC


By: /s/ Kelly G. Prather_____
        Kelly Greenwood Prather
        TBN: 00796670;
        2009 North Durham Drive
        Houston, Texas 77008
        Telephone: (713) 333-3200
        Facsimile: (713) 621-1449
        Kelly@HoustonInjuryLaw.com